**Carlos VAZQUEZ, Plaintiff,**

v.

**P.O. Jorge MARCIANO, et al., Defendants.**

**No. 99 CIV 10434(CM).**

United States District Court, S.D. New York.

Oct. 15, 2001.

Carlos Vazquez, Plaintiff Pro Se, Pomona.

Bunyan & Baumgartner, LLP, Blauvelt, for Defendants Marciano and Brooks.

Rende, Ryan & Downes, LLP, White Plains, for Defendant Lippe.

## ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT FILED BY DEFENDANTS MARCIANO, BROOKE AND LIPPE, SUA SPONTE DISMISSING CLAIM AGAINST DEFENDANT WILSON, AND CLOSING CASE

McMAHON, District Judge.

Three of the four named defendants in this civil rights action alleging violations of 42 U.S.C. § 1983 have moved for summary judgment dismissing the complaint. Their motions are granted. In addition, the complaint is dismissed *sua sponte* as against the fourth and final defendant, because, on the undisputed facts, she could not have committed any constitutional violation.

## STATEMENT OF UNDISPUTED FACTS

The following statement of fact is taken entirely from the Rule 56.1 Statements filed by movants Marciano, Brooke and Lippe. Although plaintiff was served with notice of his responsibilities when confronted with a motion for summary judgment, as required by Local Rule, he did not respond and has not responded for a period of four months. Accordingly, the facts as set forth in the Rule 56.1 Statements are deemed to be true—though the Court observes that all of them are supported by references to plaintiff's deposition or other documentary evidence and sworn testimony submitted by movants.

On June 8, 1999, plaintiff Carlos Vazquez was involved in a serious automobile crash. He was at the wheel of the car, although he had an expired driver's license. Prior to the accident, he smoked two bowls of marijuana, sniffed two or three lines of cocaine and drank perhaps 15 or 16 beers. The accident occurred because plaintiff attempted to elude the police, who had gone to lights and sirens and were trying to pull him over. He hit a tree while driving at least 50 MPH. Prior to hitting the tree, he sped through the narrow, two-way streets of Spring Valley, a largely residential community, in the middle of the afternoon, and drove through the grounds of Spring Valley High School at approximately 4:30 PM, while the building was open. He hit the tree so hard that parts of the tree fell and damaged his vehicle. From the videotape of the incident that was submitted with the motion papers, it appears that the vehicle caught fire at some point. The impact caused plaintiff to black out, and his passenger was trapped in the vehicle.

Plaintiff ran from the car and down an embankment in an effort to evade capture. He was tackled from behind and handcuffed while resisting arrest. Plaintiff smelled strongly of alcohol, his eyes were bloodshot, and he told the officers that he could not walk up the hill because he was drunk. He had to be pulled up the hill by defendants Marciano and Brooke (who each gripped plaintiff under one arm), and

then forced inside the waiting police car. The Court viewed on the videotape the plaintiff in the custody of the two officers. While each had a good grip on one of his arms, by no definition of the word "excessive" could this be viewed as "excessive force."

Plaintiff admittedly resisted being put in the car. The arresting officers forced plaintiff's head down in order to get him into the car. Plaintiff was not hurt when he was placed in the police car. He was not struck, punched, kicked or otherwise assaulted by the two defendant police officers.

Plaintiff alleges that he was verbally harassed while he was in the police car. By plaintiff's own admission, neither Marciano nor Brooks was responsible for the alleged harassment.

During his time in the police car, plaintiff moved his cuffed hands from the back of his person to the front. It appeared to PO Marciano that defendant was trying to choke himself with his handcuffs. Marciano therefore asked that plaintiff be removed from the police car and transported to the hospital. Plaintiff did not want to go to the hospital, claimed that he was not hurt, and refused to get out of the police car and get on a stretcher. He resisted being removed from the police car, but he was forcibly removed. Neither Marciano nor Brooks effected his removal.

Plaintiff was taken to the hospital. The ride took about 10 minutes. During the ride, he resisted having his head immobilized on a back board, and Officer Marciano, along with a member of the medical team that responded to the scene, attempted to hold his head down. This, by plaintiff's admission, was the only force used on him during the ambulance ride. Plaintiff spit at Marciano and ripped a towel that was being used to restrain him with his teeth. He also ripped the I.V. unit that

had been placed into his arm with his teeth, and it came out. Plaintiff had to be held down so the I.V. could be reintroduced. During the ride, plaintiff also threatened to kill Marciano, the medical team and himself.

When plaintiff arrived at Good Samaritan Hospital, he was sedated and several medical procedures were performed on him. Plaintiff resisted, and the towel that Marciano had used to restrain plaintiff in the ambulance remained over his face until he stopped resisting. The sedatives put plaintiff "into a real daze." He did not become aware of what was happening again for two days.

Plaintiff was treated at the emergency room of Good Samaritan Hospital by defendant Lippe. He required extensive sedation (6 mg. Of Ativan, 5 mg. Of Versed and 2 mg. Haldol) before he could be examined. These were the sedatives that put the already seriously intoxicated plaintiff into what he himself called a "daze."

After the sedatives had been administered, Marciano asked Lippe if plaintiff was capable of consenting to a blood test for purposes of confirming that a Vehicle and Traffic Law violation had occurred. Lippe opined that plaintiff was not competent to give informed consent. Marciano did not ask plaintiff for consent, but ordered that blood be drawn. Non-moving defendant Wilson drew the blood at Marciano's direction. It tested positive for cocaine and marijuana. Plaintiff's blood alcohol content was .11, which is above the legal limit.

In addition, Lippe ordered blood and urine tests in order to ascertain whether plaintiff had suffered any internal injuries. Lippe made this decision independent of any request from Marciano.

Plaintiff has claimed a variety of injuries resulting from the incident, ranging from

blurred vision as a result of the use of the towel to restrain him in the ambulance to sexual dysfunction resulting from introduction of a catheter into his urethra. The only mark on his body to which plaintiff could point was a bruise that disappeared after a couple of weeks. Pain in his ribs also disappeared within weeks. Although plaintiff currently contends that he suffered from breathing problems, he stated, on a medical form he filled out in November 1999, that he did not suffer from breathing problems, other than those arising from seasonal allergies. Plaintiff offers no competent medical testimony to buttress his contention (in deposition) that he suffered any injury as a result of his altercation with the police officers.

Plaintiff was convicted of Reckless Endangerment in the First Degree and Driving While Intoxicated on November 1, 1999.

## THE ABOVE FACTS ARE FOUND ON DEFAULT

■ Because plaintiff has failed to respond to the pending motions for a period of 120 days, despite being duly notified, by all three movants, of his responsibilities when confronted with a dispositive motion under Rule 56, the Court adopts the above statement (drawn from the movants' rule 56.1 statements) as its findings of fact.

## MOVANTS ARE ENTITLED TO DISMISSAL AS A MATTER OF LAW

Under Federal Rule of Civil Procedure 56(c), the court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the movants are entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Furthermore, where a plaintiff cannot establish an essential element of his claim, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 322–33, 106 S.Ct. 2548. On a motion for summary judgment, the court views the record in the light most favorable to the non-movants and resolves all ambiguities and draws all reasonable inferences against the movants. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Donahue v. Windsor Locks Bd. of Fire Commn'rs*, 834 F.2d 54, 57 (2d Cir.1987).

On this motion, taking the facts as alleged, and drawing reasonable inferences in the plaintiffs' favor, plaintiff has failed as a matter of law to make out any claim against the moving defendants.

■ Plaintiff asserts claims against Marciano and Brooks for excessive force. As a matter of law, the force used by Marciano and Brooks to get plaintiff into the police car was not unreasonable. A finding of excessive force can only be made with careful attention to the facts and circumstances of the particular case. *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). There was probable cause to arrest plaintiff and transport him in a secure police vehicle. Plaintiff admitted that he resisted entering the vehicle. As a matter of undisputed fact, the only forced used was to push his head down. Under no circumstances could that be deemed an unreasonable application of force. *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973). Furthermore, the force (such as it was) that was used caused plaintiff no injury, and is therefore not actionable. *McAllister v. New York City Police Department*, 49 F.Supp.2d 688 (S.D.N.Y.1999).

For the same reasons, the force used by Marciano to restrain plaintiff in the ambulance does not give rise to any claim under Section 1983.

■ Plaintiff's claim of verbal harassment suffered while in the car does not lie against the defendant officers, because no personal involvement was alleged. *McAllister, supra.,* citing *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994), and because even if Marciano and Brooks had directed insults to plaintiff, this would not amount to a constitutional violation. *Batista v. Rodriguez,* 702 F.2d 393, 398 (2d. Cir. 1983); *Liner v. Ward,* 754 F.Supp. 32 (S.D.N.Y.1991).

■ Plaintiff also contends that Marciano violated his civil rights by forcing him to receive medical treatment. Plaintiff had just been in a serious automobile accident. He admits that he lost consciousness after his car hit the tree. He was also visibly inebriated, and admitted to intoxication. Moreover, plaintiff's passenger was unconscious and trapped inside the vehicle. A reasonable police officer not only could have, but would have, concluded that plaintiff could have been seriously injured in the accident and was therefore in need of medical assistance. As defendants point out, if the police had not sent plaintiff to the hospital, they no doubt would have been sued for refusing him needed medical treatment. Marciano's decision to send plaintiff to the hospital was objectively reasonable. He is entitled to qualified immunity for making it.

■ Finally, plaintiff contends that Marciano violated his civil rights by taking blood from plaintiff without his consent. When Marciano gave the order to take the blood, he had been advised by a medical doctor that plaintiff was not competent to give legally binding consent. The law is clear that a blood sample can be taken from an unconscious motorist without his consent without any constitutional violations being committed. *People v. Dixon,* 149 A.D.2d 75, 80–81, 543 N.Y.S.2d 993, 996–97 (2d Dept.1989) (citing *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983)). Therefore, no claim is stated for this alleged violation of plaintiff's civil rights.

■ Because it did not violate plaintiff's constitutional rights for Marciano to order that a blood sample be drawn, non-moving defendant Wilson—assuming arguendo that she was acting as a State actor in drawing the blood—could not have committed any constitutional infraction by so doing. Therefore, the Section 1983 claims against her are dismissed *sua sponte.*

■ On the facts found, no federal claim is or could be stated against Dr. Lippe. He did not order the allegedly offending blood sample to be drawn; Marciano did. Any sedatives administered to plaintiff, and any blood or urine samples taken by Lippe, were given or taken at his own instigation for the purpose of helping him make a professional medical diagnosis. Thus, Lippe cannot be considered a State actor, whether under the compulsion test, the close nexus/joint action test, or the public functions test. *Okunieff v. Rosenberg,* 996 F.Supp. 343, 348 (S.D.N.Y.1998), *aff'd* 166 F.3d 507 (2d Cir.1999), *cert. denied,* 528 U.S. 1144, 120 S.Ct. 1002, 145 L.Ed.2d 945 (2000); *Flagg Bros. Inc. v. Brooks,* 436 U.S. 149, 156–57, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). The State is ultimately not liable for determinations that "turn on medical judgments made by private parties according to professional standards that are not established by the State." *Blum v. Yaretsky,* 457 U.S. 991, 1008, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), especially where, as here, Lippe

was not performing a function traditionally reserved for the State and where he was not under contract with the State to provide medical services.

In sum, on the undisputed facts, the plaintiff's complaint is totally lacking in merit and it is ordered dismissed as against all defendants, including the non-moving defendant.

The Clerk of the Court is directed to enter judgment and close the case.