Oxana Alexandrovna KOULKINA, et al., Plaintiffs,

v.

The CITY OF NEW YORK, et al., Defendants.

No. 06 Civ. 11357(SHS)(HBP).

United States District Court, S.D. New York.

Feb. 19, 2008.

Oxana Alexandrovna Koulkina, New York City, Pro se.

Nina Vasilievna Koulikova, New York City, Pro se.

Jessica Talia Cohen, NYC Law Department, Richard E. Lerner, Shelowitz Broder LLP, Jessica Talia Cohen, NYC Law Department, New York City, Andrew N. Squire, Andrew Squire, ESQ., Brooklyn, NY, Gregory John Radomisli, Martin Clearwater & Bell LLP, Jonathan B. Bruno, Kaufman, Borgeest & Ryan, LLP, Ares Demetrius Axiotis, Axiotis, Michalovits & Huebner, LLP, William Goldman Scher, Garbarini & Scher, P.C., New York City, for Defendants.

### ORDER

SIDNEY H. STEIN, District Judge.

On January 23, 2008, Magistrate Judge Henry Pitman issued a thorough 68 page Report and Recommendation recommending that the motions to dismiss made by defendants NYPD, Smock, Callagy, Buzin, Bobrovskaya, Dr. Gaudio, Kramer, Dr. Kelly, Dr. Pandya, Muzzin, and Charne be granted in their entirety and that the motion to dismiss made by the City of New York, Finkle, and Kuznetsoff be granted in part and denied in part. After a *de novo* review of the Report and Recommendation dated January 23, 2008, and plaintiffs' "Answer to Report and Recommendation" dated February 14, 2008,

IT IS HEREBY ORDERED that:

1. The Court adopts the Report and Recommendation of Magistrate Judge Pitman;

2. The motions to dismiss made by defendants Smock, Callagy, Buzin, Bobrovskaya, Dr. Gaudio, Kramer, Dr. Kelly, Dr. Pandya, Muzzin, and Charne are granted in their entirety [35, 43, 48, 70, 80, 81, 92]; and

3. The motion to dismiss made by defendants City of New York, NYPD, Finkle, and Kuznetsoff [94] is granted in its entirety with respect to the NYPD; granted to the extent that it seeks dismissal of the Section 1983 claims against the City, Finkle, and Kuznetsoff; and denied to the extent it seeks dismissal of the intentional infliction of emotional distress claims against the City, Finkle, and Kuznetsoff.

SO ORDERED.

### REPORT AND RECOMMENDATION

PITMAN, United States Magistrate Judge.

TO THE HONORABLE SIDNEY H. STEIN, United States District Judge,

#### I. *Introduction*

In an Amended Complaint filed on February 20, 2007, plaintiffs *pro se*, Oxana Koulkina and Nina Koulikova, assert claims against nineteen defendants for civil rights violations, pursuant to 42 U.S.C. § 1983, and for numerous state law violations. Fourteen defendants have moved to dismiss on various grounds:

(1) The City of New York (the "City"), the New York City Police Department

(the "NYPD"), Florence Finkle, and Victor Kuznetsoff move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Docket Item 94);

(2) Edward Smock, Esq. and Anne Callagy, Esq. move to dismiss pursuant to Rules 12(b)(1), (2), (4), (6), and 12(c) (Docket Item 35);

(3) Heath Buzin, Esq. and Viktoriya Bobrovskaya move to dismiss pursuant to Rules 12(b)(1) and (6) (Docket Item 80);

(4) Dr. Giovanni Gaudio and Laura Kramer move to dismiss pursuant to Rules 12(b)(6) and 12(c) (Docket Item 92);

(5) Dr. Bryan Kelly moves to dismiss pursuant to Rules 12(b) (1), (2), (4), (5), (6) and 12(c) (Docket Item 81);

(6) Dr. Paru Pandya moves to dismiss pursuant to Rules 12(b) (1), (6), and 12(c) (Docket Item 43);

(7) Victor Muzzin moves to dismiss pursuant to Rule 12(b)(6) (Docket Item 70); and

(8) Allen Charne moves to dismiss pursuant to Rules 12(b)(1), (6), and 12(c) (Docket Item 48).

For the reasons set forth below, I respectfully recommend that the motions made by the NYPD, Smock, Callagy, Buzin, Bobrovskaya, Dr. Gaudio, Kramer, Dr. Kelly, Dr. Pandya, Muzzin, and Charne be granted in their entirety and that the motion made the City, Finkle, and Kuznetsoff be granted in part and denied in part.

## II. *Facts*[1]

### A. *Plaintiffs' Allegations*

Plaintiffs, who are citizens of Russia, live in New York City and are homeless (Amended Complaint, dated Feb. 20, 2007

("Am.Compl.") at 1). Their Amended Complaint sets forth a mix of allegations against a number of defendants. Some of their allegations are interrelated; some are not.

### 1. *Callagy*

In 2001, plaintiffs sought advice from Anne Callagy, Esq., an attorney with the Legal Aid Society, concerning how they could obtain public assistance benefits and work authorizations. Callagy succeeded in obtaining public assistance benefits for plaintiffs but not the work authorizations (Am. Compl. at 20–21).

### 2. *The City and the NYPD*

In April 2004, Ryan Villamil met plaintiffs and offered them, rent free, an apartment located at 212 East 90th Street, New York, New York (Am. Compl. at 3). Plaintiffs accepted and resided in the apartment for approximately one year and two months. On June 14, 2005, after Villamil commenced an eviction proceeding against plaintiffs, Robert Barsch, a New York City Marshal, and two New York City Police Officers, Agustin Melendez and Shaun Jaikissoon, evicted plaintiffs from the apartment (Am. Compl. at 4–5).[2] While on the sidewalk outside the apartment, plaintiffs copied the officers' names and badge numbers, intending to lodge complaints against them. According to plaintiffs, this prompted the officers to assault them physically and to arrest them without probable cause. After arresting plaintiffs, the officers brought them to the 19th Precinct located at 153 East 67th Street (Am. Compl. at 5).

---

1. The facts set forth herein are drawn from plaintiffs' Amended Complaint and the attached exhibits (Docket Item 10).

2. Barsch and Officers Melendez and Jaikissoon are all defendants in this action but have not made any motions.

### 3. *Smock*

On June 15, 2005, plaintiffs appeared before the New York City Criminal Court on misdemeanor charges relating to the arrests described in the preceding paragraph. Ned Smock, Esq., an attorney with the Legal Aid Society, was assigned to and represented plaintiffs during this proceeding. Plaintiffs allege that Smock's representation was inadequate because he "did not say to the Judge that plaintiffs [were] not guilty" (Am. Compl. at 12).

### 4. *Dr. Gaudio and Kramer*

At midnight on June 15, 2005, after leaving Criminal Court, plaintiffs went to the emergency room of New York Presbyterian Hospital ("NYPH"), seeking treatment for injuries allegedly sustained during their confrontation with the police. Koulikova claims to have suffered a cut lip, and Koulkina claims to have sustained injuries to her left knee (Am. Compl. at 5). At approximately 2:00 a.m. on June 16, 2005, Dr. Giovanni Gaudio, of NYPH, examined plaintiffs' injuries (Am. Compl. at 7; Emergency Department Record, dated June 16, 2005, annexed as Exhibit D to Am. Compl.). Plaintiffs allege that Dr. Gaudio "did not eliminate and did not prevent further infection [to Koulikova's] mouth" and "did not eliminate infection on [Koulkina's] left knee" (Am. Compl. at 7).

After being examined by Dr. Gaudio, plaintiffs met with Laura Kramer, a social worker employed by NYPH. Kramer took notes of her counseling session with plaintiffs (Notes of Kramer, dated June 16, 2005 ("Kramer Nts."), attached as Exhibit G to Am. Compl.). In her notes, Kramer wrote that plaintiffs were " 'well and clean

appearing,' " " 'wearing high heeled shoes,' " " 'vague about where they ha[d] been living,' " " '[seen] asleep in a library,' " " '[at one point] stay[ing] at a Hostel for a year' " and " '[attempting] to secure a visa' " (Am. Compl. at 9, *quoting* Kramer Nts.). Plaintiffs allege that these statements are false (Am. Compl. at 9–11).

### 5. *Kuznetsoff*

On June 18, 2005, plaintiffs returned to the emergency room at NYPH and were referred to Victor Kuznetsoff, Esq. at the New York City Office of Immigrant Affairs (Am. Compl. at 13). After contacting the United States Immigration and Naturalization Service (the "INS"),[3] Kuznetsoff informed plaintiffs that their immigration case was not active. Plaintiffs allege that Kuznetsoff "did not assist [them] in obtaining [ ] legal assistance" (Am. Compl. at 13).

### 6. *Buzin and Bobrovskaya*

In July 2005, plaintiffs consulted attorney Heath Buzin, Esq. about commencing an action against the City arising from the injuries they allegedly sustained during their arrests. Plaintiffs allege that Buzin and Viktoriya Bobrovskaya, a paralegal at Buzin's firm, "pretended that they [were] working on plaintiff[s'] false arrest/police brutality/personal injury case" against the City (Am. Compl. at 13).

From the exhibits attached to the Amended Complaint, it appears that Buzin filed a notice of claim against the City (*see* Notice of Claim, dated July 19, 2005, annexed as Exhibit J to Am. Compl.), and the City requested a hearing to question plaintiffs about the extent of their alleged

**3.** Plaintiffs appear to be mistaken about the name of the federal agency Kuznetsoff contacted. On March 1, 2003, the INS ceased to exist and its functions were assumed by the Bureau of Immigration and Customs Enforcement and the Bureau of Citizenship and Immigration Services, which are both part of the Department of Homeland Security. *See* 6 U.S.C. §§ 252, 271, 291; *Brown v. Ashcroft*, 360 F.3d 346, 348 n. 1 (2004).

injuries.[4] Buzin and Bobrovskaya adjourned this hearing to August 22, 2005 and again from August 22, 2005 to September 23, 2005 (*see* Letters from Office of Comptroller to Buzin, dated Aug. 8, 2005 & Aug. 22, 2005, annexed as Exhibit J to Am. Compl.). To gather evidence for plaintiffs' claim, Buzin and Babrovskaya instructed Koulkina to obtain an x-ray of her knee, which she did on November 2, 2005. After plaintiffs signed medical information release forms, Buzin and Babrovskaya also obtained an MRI report concerning Koulkina's knee (Am. Compl. at 14).

On January 18, 2006, Buzin sent a letter to plaintiffs, informing them that, "[a]fter conducting a thorough investigation of the facts regarding [their] case, ... it [was] the decision of [his] office not to pursue a negligence case on [their] behalf" (Letter from Heath Buzin, Esq. to Koulikova and Koulkina, dated Jan. 18, 2006 ("Buzin 1/18/2006 Ltr."), attached as Exhibit J to Am. Compl.). Buzin also advised plaintiffs that, if they chose to pursue a claim against the City, they had to commence it within one year and ninety days of June 14, 2005 (Buzin 1/18/2006 Ltr.).[5]

On February 20, 2006, Buzin sent a second letter reiterating the substance of his first letter and adding that, after "a review of all the medical records[,] [he had] determined that the extent of [plaintiffs'] injuries would not warrant the time and expense involved in litigating a case against the City" (Letter from Heath Buzin, Esq. to Koulikova and Koulkina, dated Feb. 20, 2006 ("Buzin 2/20/2006 Ltr."), attached as Exhibit J to Am. Compl.).

### 7. *Charne*

Plaintiffs allege that Allen Charne, the Executive Director of the Legal Referral Service of the Association of the Bar of the City of New York (the "referral service of ABCNY"), failed to refer plaintiffs to attorneys in connection with their (1) immigrations issues; (2) grievances against North Central Bronx Hospital; and (3) grievances against the City and the NYPD arising out of their June 14, 2005 arrests. Plaintiffs allege that Charne's allegedly improper conduct occurred on various dates between 2000 and May 4, 2006 (Am. Compl. at 16–17).

Plaintiffs further allege that, on May 4, 2006, the referral service of ABCNY denied plaintiffs a consultation with an attorney from the Volunteer Lawyers Panel Project to obtain advice with regard to their "false arrest, police brutality, personal injuries case" against the City (Am. Compl. at 17). In support of their allegations against Charne, plaintiffs refer to a July 20, 2005 letter, in which Charne allegedly refused to provide an attorney referral for plaintiffs.[6] Plaintiffs allege that as a result of Charne's refusal to refer them to attorneys, they have no legal documents and no place to live (Am. Compl. at 17).

---

4. The filing of a notice of claim is a condition precedent to the commencement of a tort claim against a municipality. N.Y. Gen. Mun. Law § 50–e. "The purpose of the notice of claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation." *Fincher v. County of Westchester,* 979 F.Supp. 989, 1002 (S.D.N.Y.1997). One method a municipality may use to investigate a claim is through an examination of the claimant at a hearing pursuant to New York General Municipal Law Section 50–h.

5. *See* N.Y. Gen. Mun. Law § 50–i(1).

6. Although plaintiffs state that this letter is attached as an exhibit to the Amended Complaint, this letter is not annexed.

### 8. *Muzzin*

In September, 2005, Father Victor Muzzin, pastor of St. Francis de Sales Parish in Manhattan, allowed plaintiffs, who had been sleeping in Central Park since their eviction on June 14, 2005, to live in his church's basement without charge (Am. Compl. at 21–22). During November and December, 2005, Muzzin issued two checks, totaling $3,500, to help plaintiffs retain an attorney for help with their immigration problems (Am. Compl. at 22; Checks signed by Muzzin, dated Nov. 1, 2005 & Dec. 5, 2005, annexed as Exhibit L to Am. Compl.).

In January 2006, plaintiffs "created [a] commotion" in the office of Marina Zaharatos, Esq., an immigration attorney.[7] As a result, Zaharatos returned the two checks Muzzin had given plaintiffs and withdrew from her representation of plaintiffs (Am. Compl. at 22; Letter from Muzzin to Koulikova and Koulkina, dated Mar. 20, 2006 ("Muzzin 3/20/2006 Ltr."), annexed as Exhibit P to Am. Compl.). In response to this incident, Muzzin wrote a letter to plaintiffs, informing them that he was "no longer interested in helping [them] with [their] legal case" (Muzzin 3/20/2006 Ltr.).

Plaintiffs allege that Muzzin "was working against plaintiffs" and that he issued the checks so that the attorney did "not work [on] plaintiff[s'] immigration trafficking case" (Am. Compl. at 22). At some later time, Muzzin wrote a second letter to plaintiffs, advising them that their unwillingness to answer questions was the only reason that an unidentified social services agency[8] could not assist them. Muzzin wrote that this evasiveness left "the impression that [plaintiffs] got to this country through criminal ways like drugs, prostitu-

tion[, and] stuff like that" (Letter from Muzzin to Koulkina ("Muzzin Ltr."), annexed as Exhibit P to Am. Compl.). Muzzin also wrote that he was getting close to the point when he would tell plaintiffs to leave the church's premises (Muzzin Ltr.). On February 10, 2007, church workers removed plaintiffs' belongings from the basement. Plaintiffs called the police but were told that they had to leave the premises and would be arrested if they returned to the church (Am. Compl. at 24–25).

### 9. *Dr. Kelly*

On September 20, 2005, Dr. Bryan Kelly, of NYPH's Weill Cornell Medical Center, examined Koulkina's left knee. Plaintiffs allege that Dr. Kelly "did not evaluate the knee[,]" "did not prevent swelling," and "refused to prescribe orthopaedic shoes" to Koulkina (Am. Compl. at 8–9).

### 10. *Dr. Pandya*

On March 16, 2006, Dr. Paru Pandya, of Mount Sinai Medical Center, also examined Koulkina's left knee. Plaintiffs allege that Dr. Pandya did not "prevent the swelling around [the] left joint[,]" "did not refer [ ] Koulkina to [an] orthopaedist[,]" and "refused to make an appointment for [an] MRI of [Koulkina's] spine" (Am. Compl. at 17).

### 11. *Finkle*

By letter dated June 9, 2006, plaintiffs were informed that the City's Civilian Complaint Review Board (the "CCRB") had conducted an investigation into their complaints against Officers Melendez and Jaikissoon and had found the officers' conduct to be lawful and proper (Letter from the CCRB to Koulkina, dated June 9, 2006

---

**7.** Zaharatos is a defendant in this action but has not made a motion with respect to the Amended Complaint.

**8.** Muzzin does not provide the name of the social services agency in this letter.

("CCRB Ltr."), annexed as Exhibit K to Am. Compl.). Presumably as a result of this letter, plaintiffs have named Florence Finkle, then-Executive Director of the CCRB, as a defendant, alleging that the CCRB's findings were "false" (Am. Compl. at 16).

### B. *Procedural History*

The motions that give rise to this Report and Recommendation were filed on various dates between March 31, 2007 and June 18, 2007. When plaintiffs did not file a timely response to any of the motions, I issued an Order, dated October 11, 2007, directing plaintiffs to advise me no later than November 12, 2007 whether they wished to pursue their action (Docket Item 98). Plaintiffs did not directly answer this question and, instead, stated that they had "anti[c]ipated to receive mentally-ill letters from [me] and Judge Stein and [their] expectations proved to be correct" (Letter from Koulkina and Koulikova to the Honorable Henry Pitman, United States Magistrate Judge, dated Oct. 24, 2007).

Despite the October 11, 2007 Order, plaintiffs have still not responded on the merits to any of the pending motions. Notwithstanding plaintiffs' default in responding to the motion, I shall, nevertheless, address the merits of the pending motions (Docket Items 35, 43, 48, 70, 80, 81, 92, 94). *See McCall v. Pataki,* 232 F.3d 321, 322–23 (2d Cir.2000); *Haas v. Commerce Bank,* 497 F.Supp.2d 563, 564 (S.D.N.Y.2007) ("[F]ailure to oppose a 12(b)(6) motion cannot itself justify dismissal of a complaint.").

**9.** Dr. Kelly raises objections to service pursuant to Rules 12(b) (2), (4), and (5), and Smock raises similar objections pursuant to Rules 12(b)(2) and (4).

Motions challenging the sufficiency of service of process are properly made under Rule 12(b)(5), not Rule 12(b)(2) or Rule 12(b) (4).

### III. *Analysis*

"Where a Court is asked to rule on a combination of Rule 12 defenses, it will pass on the jurisdictional issues before considering whether a claim is stated in the complaint." *Sunrise Indus. Joint Venture v. Ditric Optics, Inc.,* 873 F.Supp. 765, 769 (E.D.N.Y.1995); *accord Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir.1963) (*en banc* ) ("[L]ogic compel[s] initial consideration of the issue of jurisdiction over the defendant—a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim . . . ."); *see also Hertzner v. U.S. Postal Serv.,* 05–cv–2371 (DRH)(ARL), 2007 WL 869585 at *3 (E.D.N.Y. Mar. 20, 2007); *Hayden v. New York Stock Exch., Inc.,* 4 F.Supp.2d 335, 337 (S.D.N.Y.1998); *Moreno v. United States,* 965 F.Supp. 521, 523–24 (S.D.N.Y.1997). I shall, therefore, address the jurisdictional defenses before turning to the defenses addressed to the legal sufficiency of the allegations in the Amended Complaint.

The foregoing precepts would ordinarily result in the issue of subject matter jurisdiction being addressed first. However, all of the motions asserting lack of subject matter jurisdiction are predicated on the alleged lack of a viable federal claim, making it impossible to address subject matter jurisdiction independently of the sufficiency of the pleadings. Accordingly, I shall address the objections to personal jurisdiction first and then turn to the sufficiency of the pleadings and subject matter jurisdiction.[9]

*See Tomney v. Int'l Ctr. for the Disabled,* 02 Civ. 2461(DC), 2003 WL 1990532 at *3 (S.D.N.Y. Apr. 29, 2003) (Rule 12(b) (2)); *Anzulewicz v. Nat'l Fuel Gas Supply Corp.,* 208 F.R.D. 47, 49 n. 5 (W.D.N.Y.2002) (Rule 12(b)(4)); *see also* 5B Charles A. Wright & Arthur M. Miller, *Federal Practice & Procedure*

A. *Motion to Dismiss Pursuant to Rule 12(b)(5) for Insufficiency of Service of Process*

 Defendants Dr. Kelly and Smock move to dismiss for insufficient service of process. "[I]n considering a motion to dismiss pursuant to 12(b)(5) for insufficiency [of service] of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction." *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F.Supp.2d 382, 387 (S.D.N.Y.2002); *see also C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc.*, 419 F.Supp.2d 419, 427 (S.D.N.Y.2005) ("[I]n resolving [a 12(b)(5) ] motion, the court 'must look to matters outside the complaint' to determine what steps, if any, the plaintiff took to effect service."). "When a defendant raises a Rule 12(b)(5) 'challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy.'" *Mende v. Milestone Tech., Inc.*, 269 F.Supp.2d 246, 251 (S.D.N.Y.2003), *quoting Preston v. New York*, 223 F.Supp.2d 452, 466 (S.D.N.Y.2002). " 'Conclusory statements' that service was properly effected are insufficient to carry that burden." *C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc.*, *supra*, 419 F.Supp.2d at 427, *quoting Howard v. Klynveld Peat Marwick Goerdeler*, 977 F.Supp. 654, 658 (S.D.N.Y.1997).

1. *Dr. Kelly*

 Dr. Kelly argues that service of process was defective under Section 312–a of the N.Y. C.P.L.R. Pursuant to this section, a plaintiff may serve a defendant by mailing the summons, complaint, two copies of an acknowledgment form, and a return envelope, postage prepaid to the defendant. N.Y. C.P.L.R. § 312–a(a). For service by mail to be effective, the defendant must "complete the acknowledgment . . . and mail or deliver one copy of [the completed forms to the sender] within thirty days." C.P.L.R. § 312–a(b); *see also Dillion v. U.S. Postal Serv.*, 94 Civ. 3187(SAS), 1995 WL 447789 at *4 (S.D.N.Y. July 28, 1995) ("Service is not complete until the defendant returns the acknowledgment form to the plaintiff, and [i]f the acknowledgment of receipt is not mailed or returned . . . [plaintiff] is required to effect personal service in another manner.") (internal quotation marks omitted).

Dr. Kelly argues that service of process was defective because: (1) plaintiffs only included one copy of the statement of service by mail and acknowledgment of receipt; and (2) he did not complete and mail or return the acknowledgment of receipt to plaintiffs. Plaintiffs do not contend that they received an acknowledgment form. In addition, the docket sheet does not disclose that plaintiffs attempted to serve process on Dr. Kelly in any manner except by mail. Thus, service of process on Dr. Kelly did not comply with the requirements of Section 312–a. *See Mende v. Milestone Tech., Inc.*, *supra*, 269 F.Supp.2d at 252; *Sunbear Sys. v. Schaffhauser*, 98 Civ. 1500(AGS), 1998 WL 265239 at *1 (S.D.N.Y. May 26, 1998) ("Although personal service by mail is permitted under C.P.L.R. Section 312–a, there is no evidence . . . defendants executed [ ] an acknowledgment, as required by that provision. Accordingly, service on the defendants was clearly improper, and the Com-

§ 1353, at 334 (3d ed. 2004) ("An objection under 12(b)(4) concerns the form of the process . . . . A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint."). Because both Dr. Kelly and Smock challenge the sufficiency of plaintiffs' service of process, I treat their motions as motions to dismiss under Rule 12(b)(5).

plaint is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5).").

Accordingly, Dr. Kelly's motion to dismiss for insufficient service of process should be granted.[10]

### 2. *Smock*

Smock also argues that he was never properly served with the Summons and Complaint or the Amended Summons and Amended Complaint. In his memorandum of law, Smock claims that the Complaint lists Smock's address as being in New York City and that, upon information and belief, Smock now resides in California.[11] Without further factual elaboration or citation to any legal authority, Smock concludes that service of process on him·was improper.

■ An objection to service of process "must be specific and must point out in what manner the plaintiff has failed to satisfy the requirements of the service provision utilized." *Photolab Corp. v. Simplex Specialty Co.*, 806 F.2d 807, 810 (8th Cir.1986); *accord O'Brien v. R.J. O'Brien Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir.1993); *see also New York ex rel. Spitzer v. Operation Rescue Nat'l*, 69 F.Supp.2d 408, 416 (N.D.N.Y.1999); *King v. Best Western Country Inn*, 138 F.R.D. 39, 43 (S.D.N.Y.1991); 5B Charles A. Wright & Arthur M. Miller, *Federal Practice & Procedure* § 1353, at 341 (3d ed.2004). "Once defendant has asserted such grounds, 'the burden of proof to establish proper service of process [is] upon plaintiffs.'" *King v. Best Western Country Inn, supra*, 138 F.R.D. at 43, *quoting Saez Rivera v. Nissan Mfg. Co.*, 788 F.2d 819, 821 n. 2 (1st Cir.1986).

■ Here, Smock has not adequately specified how service upon him was deficient for purposes of invoking a Rule 12(b)(5) objection. Smock does not even identify the legal provision governing service that plaintiffs allegedly have failed to satisfy. *Cf. Hickson v. Home Fed. of Atlanta*, 805 F.Supp. 1567, 1570 (N.D.Ga. 1992) (denying Rule 12(b)(5) motion where defendant did not "inform the Court specifically how [plaintiff] failed to satisfy Rule 4's requirements"). Nor does Smock submit any supporting affidavit that attests to the alleged deficiencies in plaintiffs' service of process. *See Griffin–Nolan v. Providence Washington Ins. Co.*, 504 CV 1453(FJS)(GJD), 2005 WL 1460424 at *3 (N.D.N.Y. June 20, 2005) (noting that "common sense dictate[s] that a motion to dismiss for a failure to serve summonses requires a supporting affidavit" and denying Rule 12(b)(5) motion to dismiss for failure to include such affidavit). Thus, because of Smock's cursory treatment of this argument, I cannot determine whether Smock was properly served.

Accordingly, Smock's motion to dismiss for insufficient service of process should be dismissed.

### B. *Motion to Dismiss Pursuant to Rule 12(b)(6) and Judgment on the Pleadings Pursuant to Rule 12(c)*

The standards applicable to a motion to dismiss pursuant to Rule 12(b)(6) are well-settled and require only brief review.

When deciding a motion to dismiss under Rule 12(b)(6), [the court] must accept as true all well-pleaded factual allegations of the complaint and draw all inferences in favor of the pleader. *See*

---

**10.** As discussed below, even if plaintiffs had properly served Dr. Kelly, the claims against him would not survive his motion to dismiss pursuant to Rule 12(b)(6).

**11.** The Amended Complaint also lists Smock's address as being in New York City (Am. Compl. at 2).

*City of Los Angeles v. Preferred Communications, Inc.,* 476 U.S. 488, 493, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986); *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977) (referring to "well-pleaded allegations"); *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). " '[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.' " *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991)). The Court also may consider "matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of New York,* 199 F.3d 99, 107 (2d Cir.1999) (citing *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991)). In order to avoid dismissal, a plaintiff must do more than plead mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions." *Gebhardt v. Allspect, Inc.,* 96 F.Supp.2d 331, 333 (S.D.N.Y.2000) (quoting 2 James Wm. Moore, Moore's Federal Practice ¶ 12.34[a][b] (3d ed.1997)).

*Hoffenberg v. Bodell,* 01 Civ. 9729(LAP), 2002 WL 31163871 at *3 (S.D.N.Y. Sept. 30, 2002); *see also In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007); *Johnson & Johnson v. Guidant Corp.,* 06 Civ. 7685(GEL), 2007 WL 2456625 at *4 (S.D.N.Y. Aug. 29, 2007).

The fact that some defendants have characterized their motion as seeking judgment on the pleadings does not alter the analysis. "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir.2006); *see also King v. Am. Airlines, Inc.,* 284 F.3d 352, 356 (2d Cir.2002); *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir.2001).

The Supreme Court in *Bell Atlantic Corp. v. Twombly,* — U.S. —, —, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) recently held that, in order to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff need not provide detailed factual allegations, but the factual allegations asserted must be "enough to raise a right to relief above the speculative level . . . ." *See also Impulse Mktg. Group, Inc. v. Nat'l Small Bus. Alliance, Inc.,* 05 Civ. 7776(KMK), 2007 WL 1701813 at *4 (S.D.N.Y. June 12, 2007). In doing so, the Court expressly disavowed the oft-cited pleading standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic Corp. v. Twombly, supra,* 127 S.Ct. at 1959–60.

The Second Circuit has interpreted *Bell Atlantic Corp. v. Twombly* as "requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007) (emphasis in original); *see also Wellnx Life Scis. Inc. v. Iovate Health Scis. Research, Inc.,* 516 F.Supp.2d 270, 283 (S.D.N.Y.2007); *Mazzaro de Abreu v. Bank of Am. Corp.,* 525 F.Supp.2d 381, 387 n. 10 (S.D.N.Y. 2007).

Under both Rule 12(b)(6) and Rule 12(c), "a court must accept the [non-movant's] allegations . . . as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the [non-

movant's pleading] unless it appears beyond doubt that the [movant is entitled to judgment as a matter of law.]" *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994) (internal quotation marks omitted); *see also Irish Lesbian & Gay Org. v. Giuliani,* 143 F.3d 638, 644 (2d Cir.1998); *Shechter v. Comptroller of New York,* 79 F.3d 265, 270 (2d Cir.1996); *Burns Int'l Sec. Servs., Inc. v. United Plant Guard Workers, Local 537,* 47 F.3d 14, 16 (2d Cir.1995); *Davidson v. Flynn,* 32 F.3d 27, 29 (2d Cir.1994).

Where, as here, a plaintiff proceeds *pro se,* the complaint must be liberally construed to raise the strongest claims that the allegations suggest. *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). This rule applies "with particular stringency to [*pro se* ] complaints of civil rights violations." *Phillip v. Univ. of Rochester,* 316 F.3d 291, 293–94 (2d Cir.2003). Nevertheless, the "Court [ ] is not obliged to reconcile plaintiff's own pleadings that are contradicted by other matter asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint." *Fisk v. Letterman,* 401 F.Supp.2d 362, 368 (S.D.N.Y.2005); *see also Matusovsky v. Merrill Lynch,* 186 F.Supp.2d 397, 399–400 (S.D.N.Y.2002) (noting that in analyzing a motion to dismiss pursuant to Rule 12(b)(6) a court may consider "documents attached to the complaint as exhibits . . . . If a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss").

### C. *Plaintiffs' Federal Claims*

Plaintiffs state that "[e]ach defendant is being sued for . . . violation of plaintiff[s'] civil rights, Laws and Acts under the Constitution of the United States" (Am. Compl. at 3). I assume plaintiffs are at-tempting to allege civil rights claims pursuant to 42 U.S.C. § 1983.

Section 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

In order to state a claim under Section 1983, "a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993); *accord Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999).

### 1. *The City*

The City moves to dismiss plaintiffs' Section 1983 claim because plaintiffs have failed to allege that their injuries were due to a municipal policy or custom.

A municipality may be held liable as a "person" for purposes of Section 1983 when a civil rights violation results from a municipality's policy or custom. *Coon v. Town of Springfield,* 404 F.3d 683, 686 (2d Cir.2005), *citing Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality, however, cannot be held liable under Section 1983 for the actions of its employees or agents on the basis of *respondeat superior. Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983), *citing Monell v. Dep't of Social Servs., supra,* 436 U.S. at 691, 98 S.Ct. 2018. Instead, to hold " 'a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is

required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.' " *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir.2007), *quoting Batista v. Rodriguez, supra*, 702 F.2d at 397.

▌ Plaintiffs fail to plead any of these three elements. The Section 1983 claim against the City appears to be based entirely on the misconduct of Officers Melendez and Jaikissoon, who allegedly assaulted and falsely arrested plaintiffs on June 14, 2005 (*see* Am. Compl. at 5–6). However, even when read liberally, the Amended Complaint does not plead any fact linking the alleged assault or false arrest to any City policy or custom. *See Fisk v. Letterman*, 501 F.Supp.2d 505, 527 (S.D.N.Y. 2007) ("[A] single incident of unconstitutional conduct by a non-policymaking employee of the City will generally not suffice to establish liability [under Section 1983].") (internal quotation marks omitted); *Davis v. City of New York*, 228 F.Supp.2d 327, 336 (S.D.N.Y.2002) (same). Indeed, the Section 1983 claim against the City does not allege that plaintiffs' injuries resulted from any policy or custom.[12]

Accordingly, the City's motion to dismiss plaintiffs' Section 1983 claim for failure to state a claim should be granted.

### 2. The NYPD

The NYPD also moves to dismiss the Section 1983 claim for failure to state a claim because it is not a suable entity.

▌ Plaintiffs cannot sue the NYPD in its capacity as an agency. The New York City Charter provides:

All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law.

New York City Charter § 396. Thus, "[a]s an agency of the City, the [NYPD] is not a suable entity." *East Coast Novelty Co. v. City of New York*, 781 F.Supp. 999, 1010 (S.D.N.Y.1992); *see also Butts v. N.Y. City Dep't of Hous., Pres. & Dev.*, 00 Civ. 6307(KMK), 2007 WL 259937 at *1 n. 2 (S.D.N.Y. Jan. 29, 2007); *Nance v. New York City Police Dep't*, 01 CV 424(JB)(JMA), 2003 WL 1955164 at *1 (E.D.N.Y. April 24, 2003); *Basnight v. Rossi*, 97–CV–1312 (JB), 2003 WL 722810 at *3 (E.D.N.Y. Mar. 4, 2003); *Fieldcamp v. City of New York*, 242 F.Supp.2d 388, 391 (S.D.N.Y.2003); *Connell v. City of New York*, 230 F.Supp.2d 432, 433 n. 3 (S.D.N.Y.2002); *Bazile v. City of New York*, 215 F.Supp.2d 354, 369 (S.D.N.Y. 2002); *Montes v. King*, 00 Civ. 4707(RCC)(JCF), 2002 WL 424318 at *5 (S.D.N.Y. Mar. 19, 2002); *Gonzalez v. City of New York*, 98 Civ. 6081(MBM), 2002 WL 252564 at *2 (S.D.N.Y. Feb. 21, 2002); *Wilson v. City of New York*, 800 F.Supp. 1098, 1101 (E.D.N.Y.1992); *Stovall v. City of New York*, 87 Civ. 4961(KTD), 1988 WL 249389 at *3 n. 3 (S.D.N.Y. Dec. 8, 1988).

Accordingly, the NYPD's motion to dismiss the Section 1983 claim for failure to state a claim should be granted.

---

12. The only allegation in the Amended Complaint devoted to the City as a defendant consists of a string of legal conclusions:

The City of New York ... [is] being sued for serious and permanent personal injuries, disability from usual activities, pain and suffering, intentional infliction of emotional distress, harm to reputation, physical abuse, felonious assault, battery, false arrest, false imprisonment for about thirty five hours, malicious prosecution, malicious persecution, conspiracy, trafficking, failure to intercede and protect plaintiffs, trespass, [and] invasion of privacy.

(Am. Compl. at 3).

### 3. *Finkle and Kuznetsoff*

Plaintiffs allege that Finkle, in her official capacity as Executive Director of the CCRB, violated their civil rights because "the ... [CCRB's] Findings ... [were] unfair and not civilized" (Am. Compl. at 16). They also allege that Kuznetsoff, in his official capacity as an employee of the New York City Office of Immigrant Affairs, violated Section 1983 because he "did not assist plaintiffs in obtaining the legal assistance and referred [them] to 'Emerald Isle' which tried to deceive plaintiffs" (Am. Compl. at 13). Plaintiffs' allegations seem to suggest that Kuznetsoff failed to help plaintiffs change their immigration status. Finkle and Kuznetsoff both move to dismiss the Section 1983 claims against them on the ground that plaintiffs have not alleged the violation of any right protected by the United States Constitution or other federal law; Finkle also asserts the additional ground that plaintiffs have failed to allege her personal involvement in the violation of any rights.

 To withstand a motion to dismiss, a plaintiff asserting a violation of Section 1983 must allege a deprivation of a right secured by the Constitution or federal law. *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987); *Bissinger v. City of New York,* 06 Civ. 2325(WHP) & 06 Civ. 2326(WHP), 2007 WL 2826756 at *3 (S.D.N.Y. Sept. 24, 2007). The allegations in the Amended Complaint, at most, suggest that Finkle improperly failed to substantiate plaintiffs' complaints against Officers Melendez and Jaikissoon. However, there is no federal constitutional right to an investigation. *Blount v. Swiderski,* 203–cv–0023 (ENV), 2006 WL 3314635 at *12 (E.D.N.Y. Nov. 14, 2006) ("An individual is not constitutionally entitled to an investigation in response to an assault claim."); *Daniels v. City of Binghamton,* 3:95–CV–688 (TJM), 1998 WL 357336 at *5

(N.D.N.Y. June 29, 1998). Thus, plaintiffs fail to plead that Finkle violated any constitutional or federal right.

 With respect to Kuznetsoff, plaintiffs merely allege that Kuznetsoff "said that he contacted the Immigration and Naturalization service and that plaintiffs [were] not registered in [the] National Computer System" (Am. Compl. at 13). Based on this, plaintiffs state that Kuznetsoff "did not assist [them] in obtaining [ ] legal assistance" (Am. Compl. at 13). These allegations fail to articulate a deprivation of any constitutional or federal right. Even when read liberally, the allegations concerning Kuznetsoff at best sound in negligence. Claims sounding in negligence, however, do not rise to the level of a constitutional deprivation, *Daniels v. Williams,* 474 U.S. 327, 329, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and, thus, cannot form the predicate of a Section 1983 claim, *Smith v. New York Bd. of Educ,* CV 88–1531(RR), 1988 WL 127459 at *1–2 (E.D.N.Y. Nov. 16, 1988). Even assuming that Kuznetsoff's failed to provide adequate advice to plaintiffs and that he was negligent, plaintiffs have not sufficiently pled a deprivation of a constitutional or federal right.

Finkle's second argument—that plaintiffs fail to state a claim because they do not allege facts which, if true, would establish Finkle's personal involvement in any constitutional violation—is also meritorious. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994), *quoting Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991); *see also Smart v. Goord,* 441 F.Supp.2d 631, 642 (S.D.N.Y.2006). "The rule in this circuit is that when monetary damages are sought under § 1983, the

general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required." *Wright v. Smith, supra,* 21 F.3d at 501 (internal quotation marks omitted). An individual who occupies a supervisory position may be found personally involved if

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *see also Wright v. Smith, supra,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986).

Here, plaintiffs do not allege that Finkle personally conducted an investigation of Officers Melendez and Jaikissoon's alleged misconduct. The only fact plaintiffs offer in support of their claim is that Finkle, in her official capacity as Executive Director of the CCRB, signed the letter informing plaintiffs of the CCRB's conclusions (Am. Compl. at 16; CCRB Ltr.). Even assuming that Finkle's signature on the letter evidenced her awareness of a constitutional violation against plaintiffs, the Amended Complaint fails to allege that Finkle was in a position to take any corrective action given her relationship with the CCRB.

The CCRB is an independent board composed of thirteen members and vested with the "power to receive, investigate, hear, make findings and recommend action upon complaints by members of the public against members of the [NYPD] that allege misconduct ...." New York City Charter § 440(c)(1). The CCRB's findings and recommendations are submitted to the NYPD's Police Commissioner. New York City Charter § 440(c)(1). The Executive Director, who is appointed by the CCRB,[13] is not a CCRB member and, thus, cannot vote on these recommendations. New York City Charter § 440(b)(1). The Executive Director's role in the disposition of public complaints against the NYPD is extremely limited. For example, while the Executive Director is authorized to recommend that a case be closed prior to an investigation on the basis that the complaint concerns matters or persons not within the CCRB's jurisdiction or does not state a *prima facie* case, this recommendation is subject to review and approval by the CCRB. *See* 38–A N.Y. City Rules & Regs. §§ 1–22, 1–32(b). Thus, Finkle, as Executive Director of the CCRB, did not have the authority to take action with respect to any constitutional violation plaintiffs may have suffered from their confrontation with Officers Melendez and Jaikissoon. It necessarily follows that the allegations are insufficient to plead the personal involvement of Finkle in any alleged constitutional violation against plaintiffs. *See Keesh v. Goord,* 04–CV–271A (RJA), 2007 WL 2903682 at *6 (W.D.N.Y. Oct. 1, 2007) (dismissing Section 1983 claim for lack of personal involvement where defendant was nonvoting member of committee that oversaw prisoner grievances and merely signed determination

---

**13.** The CCRB appoints the Executive Director pursuant to New York City Charter Section 440(c)(5), which authorizes the CCRB "to appoint such employees as are necessary to exercise its powers and fulfill its duties."

made by the committee on plaintiff's grievance); *H'Shaka v. Drown*, 9:03CV937 (LEK)(RFT), 2007 WL 1017275 at *17 (N.D.N.Y. Mar. 30, 2007) (same).

Accordingly, the Section 1983 claims against Finkle and Kuznetsoff should be dismissed for plaintiffs' failure to allege the violation of a federally protected right. The Section 1983 claims against Finkle should be dismissed for the additional reason that plaintiffs have failed to allege Finkle's personal involvement in the violation of any rights.

### 4. *Non–State Actor Defendants*

#### a. *Applicable Legal Principles*

To be actionable under Section 1983, "the challenged conduct [must have been] attributable at least in part to a person acting under color of state law . . . ." *Dwares v. City of New York, supra*, 985 F.2d at 98; *see also Velez v. Levy*, 401 F.3d 75, 84 (2d Cir.2005); *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir.2004); *Varela v. Demmon*, 491 F.Supp.2d 442, 450 (S.D.N.Y.2007). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (internal quotation marks omitted). A number of the defendants who are not state actors seek dismissal on this ground.

#### b. *Legal Aid Attorneys: Smock and Callagy*

Smock and Callagy move for judgement on the pleadings with regard to the Section 1983 claim, arguing they are not state actors.

Court-appointed attorneys, including attorneys associated with the Legal Aid Society, do not act under color of state law when representing their clients. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir.1997); *McNeill v. New York*, 06–CV–4843 (NGG), 2006 WL 3050867 at *4 (E.D.N.Y. Oct. 24, 2006); *Fisk v. Letterman, supra*, 401 F.Supp.2d at 378.

Here, plaintiffs allege that Smock, a Legal Aid attorney, represented them at a hearing on June 15, 2005 in connection with the misdemeanor charges filed against them (Am. Compl. at 12). No other connection between Smock and the state is alleged. The array of authorities cited above demonstrates that plaintiffs' allegations are insufficient to meet Section 1983's state action requirement.

To the extent that plaintiffs assert a claim against Smock for conspiracy, their claim is also without merit. A court-appointed attorney may be liable under Section 1983 if the attorney "conspires with a state official to violate the plaintiff's constitutional rights." *Fisk v. Letterman, supra*, 401 F.Supp.2d at 378; *see also Washington v. Atwell*, 07–CV–6423 (CJS), 2007 WL 2789731 at *1 (W.D.N.Y. Sept. 21, 2007). However, a "complaint alleging a conspiracy to violate civil rights is held to a heightened pleading standard." *Pollack v. Nash*, 58 F.Supp.2d 294, 299 (S.D.N.Y. 1999), *citing Julian v. New York City Transit Auth.*, 857 F.Supp. 242, 252 (E.D.N.Y.1994). "To state a claim of conspiracy under § 1983 the complaint must contain more than mere conclusory allegations." *Dwares v. City of New York, supra*, 985 F.2d at 99.

Here, plaintiffs fail to show how Smock conspired with a state official to violate their civil rights. Plaintiffs merely allege that "the Legal Aid Society and the prosecutors made an agreement not [to] have a

trial on plaintiff's case and that the case would be dismissed .... Because of this blackmail, plaintiffs were forced to agree [to] a case dismissal without a trial" (Am. Compl. at 12). These allegations simply do not constitute a conspiracy to violate plaintiffs' civil rights. A criminal defense attorney, such as Smock, is clearly doing what he is supposed to be doing for his clients when he persuades the prosecutor to agree to the unconditional dismissal of criminal charges; indeed, any rational individual would characterize such a result as a total victory for the defense. Although plaintiffs describe the dismissal as "blackmail," the allegation is nonsensical. Blackmail is usually used to describe a demand for money or other things of value in return for the blackmailer either not disclosing damaging or embarrassing information or not using physical force against the victim's person or property. The unconditional dismissal of criminal charges is simply not blackmail.[14]

Moreover, plaintiffs offer no explanation of how Smock's successful negotiation of the dismissal of the criminal charges caused them any injury, and there is no basis on which an injury can be rationally inferred from the Amended Complaint.

■ Plaintiffs have also failed to allege facts suggesting that Callagy is a state actor. Plaintiffs allege that Callagy gave them advice with respect to issues concerning immigration and public assistance benefits and succeeded in obtaining public assistance benefits for them (Am. Compl. at 20–21). Callagy did not act under color of state law when giving plaintiffs her advice merely because she was a Legal Aid

attorney. *See Polk County v. Dodson, supra,* 454 U.S. at 325, 102 S.Ct. 445; *Rodriguez v. Weprin, supra,* 116 F.3d at 65–66; *McNeill v. New York, supra,* 2006 WL 3050867 at *4; *Fisk v. Letterman, supra,* 401 F.Supp.2d at 378.

Accordingly, Smock's motion for judgment on the pleadings with regard to the Section 1983 claim and the conspiracy claim should be granted. Callagy's motion for judgment on the pleadings with regard to the Section 1983 claim should also be granted.

### c. Private Attorneys: Buzin and Bobrovskaya

Buzin and Bobrovskaya move to dismiss for failure to state a claim on the ground that they are not state actors.

■ Like a Legal Aid attorney, "a private attorney representing a client in either a civil or criminal action is not a state actor for purposes of § 1983." *Washington v. Atwell, supra,* 2007 WL 2789731 at *1; *see also Kashelkar v. Rubin & Rothman,* 97 F.Supp.2d 383, 390 (S.D.N.Y.) ("It is well established that attorneys are not state officers, but private persons, for the purpose of the Civil Rights Act." (internal quotation marks omitted)), *aff'd,* 1 Fed. Appx. 7 (2d Cir.2001). "In order for liability to attach under § 1983, the attorney must conspire with state actors, even if the state actors are themselves immune from § 1983 liability." *Washington v. Atwell, supra,* 2007 WL 2789731 at *1, *citing Dennis v. Sparks,* 449 U.S. 24, 28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980).

---

14. Although it is not entirely clear, plaintiffs' conspiracy claim against Smock may arise out of their misapprehension that the dismissal of the criminal charges against them had some effect on their civil claims arising out of the arrests. If that is the basis for plaintiff's conspiracy claim, plaintiffs are clearly misguided. The criminal case against plaintiffs would probably not have involved a determination of whether there was probable cause to arrest them (there was no evidence seized incident to the arrest) or whether the arresting officers used excessive force.

■ Buzin only represented plaintiffs in connection with a contemplated personal injury suit against the City as a private attorney (Am. Compl. at 13); he was not a state actor.

Plaintiffs also fail to show that Bobrovskaya is a state actor. Plaintiffs allege that Bobrovskaya assisted Buzin in connection with their claim against the City (Am. Compl. at 14). However, as a paralegal for a private attorney, Bobrovskya is not a state actor. *See Goodyear v. Hornung,* 07–cv–276–FtM–29SPC, 2007 WL 1362735 at *2 (M.D.Fla. May 7, 2007) (dismissing plaintiff's Section 1983 claim because "[p]laintiff's privately retained defense counsel and his paralegal are not state actors").

Moreover, even when read liberally, the Amended Complaint does not set forth any facts from which a reasonable inference could be drawn that Buzin and Bobrovskay conspired with state officials to deprive plaintiffs of any constitutional or federal right. The Amended Complaint states in a conclusory fashion that Buzin and Bobrovskay "were involved in a conspiracy with the City of New York and the New York Presbyterian Hospital against plaintiffs and their case" (Am. Compl. at 13). The Amended Complaint fails, however, to detail any communication between these parties. Such conclusory allegations are inadequate to allege a claim for conspiracy under Section 1983. *Dwares v. City of New York, supra,* 985 F.2d at 99 ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed . . . ."); *Arena v. Dep't of Soc. Servs. of Nassau County,* 216 F.Supp.2d 146, 155–56 (E.D.N.Y.2002).

Accordingly, Buzin and Bobrovskay's motion to dismiss the Section 1983 claims should be granted.

d. *Private Physicians: Drs. Gaudio, Pandya and Kelly*

■ Drs. Gaudio, Pandya, and Kelly move to dismiss for failure to state a claim, arguing they are not state actors.

Private physicians are generally not state actors, especially where the physician is "not performing a function traditionally reserved for the State and where [the physician] was not under contract with the State to provide medical services." *Vazquez v. Marciano,* 169 F.Supp.2d 248, 253–54 (S.D.N.Y.2001); *see also Monaco v. Stone,* CV–98–3386 (CPS), 2002 WL 32984617 at *28 (E.D.N.Y. Dec. 20, 2002); *Okunieff v. Rosenberg,* 996 F.Supp. 343, 357 (S.D.N.Y.1998) (holding that private physician was not state actor because he "relied not on statute but on pure medical judgment, thereby dispelling any notion of state compulsion"), *aff'd,* 166 F.3d 507 (2d Cir.1999) (per curiam).

Here, plaintiffs do not allege any facts linking Dr. Gaudio, a private physician, to the state. Instead, plaintiffs merely describe how Dr. Gaudio treated Koulikova's cut to her lip, in accordance with his professional medical judgment (Am. Compl. at 7). These allegations cannot constitute state action for purposes of Section 1983. *See Vazquez v. Marciano, supra,* 169 F.Supp.2d at 253 ("The State is ultimately not liable for determinations that 'turn on medical judgments made by private parties according to professional standards that are not established by the State.' "), *quoting Blum v. Yaretsky,* 457 U.S. 991, 1008, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982).

Plaintiffs also fail to allege that Dr. Pandya is a state actor. Plaintiffs' cursory allegations concerning Dr. Pandya, a private physician, describe nothing more than his medical examination of Koulkina's knee

(Am.Compl.17). In addition, even reading their allegations liberally, plaintiffs do not and cannot allege that Dr. Pandya provided medical care to Koulkina under a state contract or in consultation with state agents.

The Amended Complaint also fails to allege that Dr. Kelly is a state actor. The allegations in the Amended Complaint and the attached exhibits reveal that, during his examinations of Koulkina, Dr. Kelly was acting entirely as a private physician (*see* Dictation of Dr. Bryan Kelly, dated Sept. 30, 2005, attached as Exhibit F to Am. Compl.; Outpatient Physical Therapy Referral, dated Sept. 30, 2005, attached as Exhibit F to Am. Compl.). These documents detail Dr. Kelly's treatment of Koulkina's allegedly injured left knee (Am. Compl. at 8–9). Plaintiffs do not allege that Dr. Kelly's diagnosis and treatment of Koulkina's left knee was in any way motivated or influenced by state law or state agents. *Cf. Tewksbury v. Dowling*, 169 F.Supp.2d 103, 110 (E.D.N.Y.2001) (finding that "private physicians employed by a private hospital" acted under color of state law because "they jointly participated with state officials" when committing plaintiff to a hospital).

Plaintiffs also assert a Section 1983 claim for conspiracy against Dr. Kelly (Am. Compl. at 8). "[T]o survive a motion to dismiss on [a] § 1983 conspiracy claim, [a plaintiff] must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324–25 (2002), *citing Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999).

Here, plaintiffs assert in conclusory fashion that a letter written by Buzin, in which Buzin withdrew from representing plaintiffs, is "evidence of attorney Buzin['s] conspiracy with Dr. Kelly" (Am. Compl. at 15). Apart from the fact that the conspiracy is not alleged with any specificity, Buzin is not a state actor. Thus, even if a conspiracy were adequately alleged, there would still be no federal claim.

Accordingly, Dr. Gaudio's motion for judgment on the pleadings with regard to the Section 1983 claim should be granted. In addition, Dr. Panday and Dr. Kelly's motions to dismiss the Section 1983 claims for failure to state a claim should be granted.

### e. *Social Worker: Kramer*

■ Kramer also moves for judgment on the pleadings, contending that she is not a state actor.

Even read leniently, plaintiffs' allegations concerning Kramer describe only private conduct. On June 17, 2007, Kramer, a social worker employed by NYPH, counseled plaintiffs after they were evaluated by Dr. Gaudio (Am. Compl. at 9; Kramer Nts.). Plaintiffs' allegations concerning Kramer detail nothing more than the purported "false statements" that Kramer allegedly recorded in her notes after counseling them (Am. Compl. at 9–11). Plaintiffs do not allege that Kramer is employed by the state or that her actions with respect to plaintiffs were taken in concert with a state agent.

Accordingly, Kramer's motion for judgment on the pleadings with respect to the Section 1983 claim should be granted.

### f. *Clergyman: Father Muzzin*

■ Muzzin moves to dismiss on the ground that he is not a state actor.

Plaintiffs' allegations concerning Muzzin state nothing more than private conduct. Plaintiffs allege that, in September 2005, Muzzin invited them to live in the base-

ment of his church (Am. Compl. at 22). While living in the church, they obtained Muzzin's assistance in retaining an immigration attorney, to whom Muzzin issued two checks, totaling $3,500 (Am. Compl. at 22). In an undated note addressed to Koulkina, Muzzin indicated he could not "be stuck with [plaintiffs] and [was] getting close to the point when [he would] tell[ ] [them] to vacate [the] premises" (Note from Muzzin to Koulkina, attached as Exhibit P to Am. Compl.). Plaintiffs allege that, on February 9, 2007, two police officers arrived at the church and informed plaintiffs that Muzzin wanted plaintiffs to leave the premises (Am. Compl. at 24). Plaintiffs further allege that the next day two church employees under the direction of Muzzin finally removed plaintiffs and their possessions from the church (Am. Compl. at 24).

These allegations do not satisfy the state action element of plaintiffs' Section 1983 claim. As a pastor in a private church, Muzzin is not a state actor. *See Williams v. Strength,* CV 106–134, 2007 WL 439118 at *6 (S.D.Ga. Feb. 7, 2007) (holding that pastor was not a state actor under Section 1983). Nor did Muzzin's direction to church employees to remove plaintiffs and their belongings from the church's premises transform him into a state actor because he was in no way exercising a right or privilege created by the state or acting in conjunction with state agents, such as the police. *See Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936–39, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Even if plaintiffs had alleged that Muzzin used a state court proceeding to evict plaintiffs, this conduct would not amount to state action. *McGuane v. Chenango Court, Inc.,* 431 F.2d 1189, 1190 (2d Cir.1970); *Weisner v. 321 W. 16th St. Assocs.,* 00 Civ. 1423(RWS), 2000 WL 1191075 at *9 (S.D.N.Y. Aug. 22, 2000). Nor did Muzzin's call to the police to inform plaintiffs

that he wanted them to leave his church constitute state action. *Porter–McWilliams v. Anderson,* 07 Civ. 0407(KMK)(LMS), 2007 WL 4276801 at *2 (S.D.N.Y. Dec. 3, 2007) ("When a private citizen calls for police assistance and makes a complaint against an alleged lawbreaker, the complaining citizen does not automatically become a state actor."). Plaintiffs' bare allegation that Muzzin called the police is also not sufficient to support an inference that Muzzin was conspiring with state officials. *Bacquie v. City of New York,* 99 Civ. 10951(JSM), 2000 WL 1051904 at *2 (S.D.N.Y. July 31, 2000) (Section 1983 conspiracy claim requires allegation that police officer did something more than merely respond to defendant's calling for police assistance). Indeed, Muzzin's alleged conduct was entirely private in nature, removing it from the reach of Section 1983. *See American Mfrs. Mut. Ins. Co. v. Sullivan, supra,* 526 U.S. at 49, 119 S.Ct. 977. Thus, the allegations in the Amended Complaint fail to show that Muzzin acted under color of state law for purposes of Section 1983.

Accordingly, Muzzin's motion to dismiss the Section 1983 claim for failure to state a claim should be granted.

### g. *Private Individual: Charne*

██ Charne moves to dismiss for failure to state a claim, arguing that he is not a state actor.

As with Muzzin, plaintiffs allege nothing more than private conduct on the part of Charne. Specifically, plaintiffs allege that Charne, the Executive Director of the referral service of ABCNY, "did not refer [them] to an attorney who could assist [them] ... in fil[ing] a lawsuit in Court against the City ... and the [NYPD]" (Am. Compl. at 16–17). However, no where in the Amended Complaint do plain-

tiffs allege any conduct or affiliation that even arguably would render Charne a state actor. Nor do plaintiffs allege that Charne was required by state law to provide plaintiffs with legal referral services. In short, plaintiffs fail to allege that Charne's "seemingly private behavior may be fairly treated as that of the State itself." *Tancredi v. Metro. Life Ins. Co.*, 149 F.Supp.2d 80, 84 (S.D.N.Y.2001).

Accordingly, Charne's motion to dismiss the Section 1983 claim for failure to state a claim should be granted.

### D. *Plaintiffs' State–Law Claims*

The City, Finkle, Kuznetsoff, Buzin, Babrovskaya, Dr. Pandya, and Charne initially argue that, pursuant to 28 U.S.C. § 1367(c)(3), the Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims in the event that the federal claims are dismissed.

This argument is without merit because there is an independent basis for subject matter jurisdiction for plaintiff's state law claim. Even if all federal claims against these defendants were dismissed, subject matter jurisdiction over the state law claims would still exist pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship. " 'An alien residing in the United States is [ ] a foreign citizen for purposes of section 1332(a)(2) ... Thus, even when a resident alien sues a United States citizens residing in the same state, section 1332(a)(2) provides federal district courts with jurisdiction.' " *Mejia v. Barile*, 485 F.Supp.2d 364, 366 (S.D.N.Y.2007) (citations omitted), *quoting Symister v. Rossi*, 85 Civ. 1266(CSH), 1985 WL 3835 at *2 (S.D.N.Y. Nov. 14, 1985). Therefore, because plaintiffs allege they are citizens of Russia (Am. Compl. at 1, 32), and because all defendants appear to be citizens of New York, diversity of citizenship for purposes of 28 U.S.C. § 1332 appears to exist.

Thus, plaintiffs' state law claims can be dismissed only if they are inadequately plead.

Plaintiffs assert three state law claims against the moving defendants: (1) intentional infliction of emotional distress ("IIED"); (2) legal malpractice; and (3) medical malpractice. Not all claims are asserted against each moving defendant.

To minimize repetition, I shall first discuss the elements of each of these claims and then apply the legal principles to each of the moving defendants.

#### 1. *Applicable Legal Principles*

#### a. *IIED*

Under New York law, to state a claim for IIED, a plaintiff must allege "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122, 612 N.E.2d 699, 702, 596 N.Y.S.2d 350, 353 (1993). "The first element—outrageous conduct—serves the dual function of filtering out petty and trivial complaints that do not belong in court, assuring that plaintiff's claim of severe emotional distress is genuine [.]" *Howell v. New York Post Co.*, *supra*, 81 N.Y.2d at 122, 612 N.E.2d 699 at 702, 596 N.Y.S.2d at 353. "The requirements of this standard are very strict, and '[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Lydeatte v. Bronx Overall Econ. Dev. Corp.*, 00 Civ. 5433(GBD), 2001 WL 180055 at *1 (S.D.N.Y. Feb. 22, 2001), *quoting Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293,

303, 448 N.E.2d 86, 90, 461 N.Y.S.2d 232, 237 (1983). A court may decide whether alleged conduct is sufficiently outrageous as a matter of law, *Howell v. New York Post Co., supra,* 81 N.Y.2d at 121, 612 N.E.2d at 702, 596 N.Y.S.2d at 353; *Roach v. Stern,* 252 A.D.2d 488, 491, 675 N.Y.S.2d 133, 135 (2d Dep't 1998), and the New York Court of Appeals has noted that "of the [IIED] claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous[,]" *Howell v. New York Post Co., supra,* 81 N.Y.2d at 122, 612 N.E.2d 699 at 702, 596 N.Y.S.2d at 353.

To assess plaintiffs' claims, it is helpful to survey conduct that New York courts have deemed sufficient or insufficient to satisfy the outrageousness element of an IIED claim.

Outrageousness has been found as a matter of law where, during a live radio broadcast, defendant allegedly handled and made disrespectful comments about the cremated remains of plaintiff's sister, which had been brought to the studio by the show's guest, *Roach v. Stern, supra,* 252 A.D.2d at 491–92, 675 N.Y.S.2d at 136; where defendants' employees allegedly made derogatory and disparaging comments during their radio broadcast about plaintiff's appearance in her bridal photograph, which had been published in a local newspaper, *Esposito–Hilder v. SFX Broadcasting Inc.,* 236 A.D.2d 186, 665 N.Y.S.2d 697 (3d Dep't 1997); where defendant allegedly yelled and gestured obscenely at plaintiff, followed plaintiff and her children home, and told plaintiff that he knew where her children went to school and when they got out of school, *Bunker v. Testa,* 234 A.D.2d 1004, 1004, 652 N.Y.S.2d 181, 182 (4th Dep't 1996); and where defendant allegedly made numerous phone calls to plaintiff and hung up when someone answered the phone, even after

defendant plead guilty to a charge of harassment for this conduct, *Flatley v. Hartmann,* 138 A.D.2d 345, 346, 525 N.Y.S.2d 637, 638 (2d Dep't 1988).

In contrast, New York courts have held that a complaint failed to satisfy the outrageousness element where defendant allegedly filed a police report against plaintiff based on a reasonable suspicion that plaintiff, an at-will employee, was stealing store merchandise, *Khan v. Reade,* 7 A.D.3d 311, 312, 776 N.Y.S.2d 281, 282 (1st Dep't 2004); where defendant allegedly attempted to kiss plaintiff at work several times, falsely maligned plaintiff's work performance, and frequently made inappropriate comments about plaintiff and her clothing, *Zephir v. Inemer,* 305 A.D.2d 170, 170, 757 N.Y.S.2d 851, 852 (1st Dep't 2003); and where defendant allegedly harassed and discharged plaintiff because she was pregnant, *Ruggiero v. Contemporary Shells, Inc.,* 160 A.D.2d 986, 987, 554 N.Y.S.2d 708, 709 (2d Dep't 1990).

b. *Legal Malpractice*

■ Under New York law, to state a claim for legal malpractice, plaintiff must allege that (1) an attorney-client relationship existed at the time of the alleged malpractice; (2) the attorney failed to exercise that degree of care, skill, and diligence commonly possessed and exercised by ordinary members of the legal community; (3) such negligence was a proximate cause of actual damages sustained by the client; and (4) that but for the attorney's negligence, plaintiff would have been successful in the underlying action. *Tabner v. Drake,* 9 A.D.3d 606, 609, 780 N.Y.S.2d 85, 88 (3d Dep't 2004); *see also Arnav Indus., Inc. Ret. Trust v. Brown, Raysman, Millstein, Felder & Steiner, LLP,* 96 N.Y.2d 300, 303–04, 751 N.E.2d 936, 938, 727 N.Y.S.2d 688, 690 (2001); *Parola, Gross & Marino, P.C. v. Susskind,* 43 A.D.3d 1020,

1022, 843 N.Y.S.2d 104, 105–06 (2d Dep't 2007). Where a legal malpractice claim arises from a criminal proceeding, plaintiff "must show that the attorney was the proximate cause of his or her conviction." *Britt v. Legal Aid Soc'y, Inc.*, 95 N.Y.2d 443, 446, 741 N.E.2d 109, 111, 718 N.Y.S.2d 264, 266 (2000).

### c. Medical Malpractice

▆▆▆▆ Under New York law, to state a claim for medical malpractice, plaintiff must allege that (1) "the physician deviated from accepted medical practice" and (2) "that the alleged deviation proximately caused [plaintiff] injuries . . . ." *Parker v. State*, 242 A.D.2d 785, 786, 661 N.Y.S.2d 868, 869 (3d Dep't 1997); *see also Auger v. State*, 263 A.D.2d 929, 931, 693 N.Y.S.2d 343, 346 (3d Dep't 1999).

### 2. Application of Law to the Claims Against Moving Defendants

### a. The City, Finkle and Kuznetsoff

Plaintiffs assert claims of IIED against the City, Finkle, and Kuznetsoff.[15] Since they make no arguments challenging the sufficiency of the IIED claims besides the argument urging me to decline to exercise supplemental jurisdiction their motion to dismiss the IIED claims should be denied.

### b. Smock

▆▆▆▆ Plaintiffs assert claims of IIED and legal malpractice against Smock (Am. Compl. at 11). Smock moves for judgment on the pleadings on both counts.

The allegations concerning Smock do not amount to extreme and outrageous conduct. Plaintiffs' allegations merely describe how Smock represented plaintiffs during a criminal proceeding. Specifically,

plaintiffs allege that Smock did not inform the Criminal Court judge that plaintiffs were allegedly seriously injured by Officers Melendez and Jaikissoon, were homeless, and not guilty (Am. Compl. at 12). Plaintiffs further allege that Smock refused to give Koulkina a photograph of plaintiff Koulkina's injuries he had taken (Am. Compl. at 12). Lastly, plaintiffs allege that Smock secured a dismissal of the charges against them (Am. Compl. at 12). Clearly, Smock's alleged conduct is in no way "atrocious" or "utterly intolerable." *Howell v. New York Post Co.*, *supra*, 81 N.Y.2d at 121, 612 N.E.2d at 702, 596 N.Y.S.2d at 353 (internal quotation marks omitted).

Accordingly, Smock's motion for judgment on the pleadings with regard to the IIED claim should be granted.

▆▆▆▆ Plaintiffs' legal malpractice claim against Smock is also fatally flawed. Plaintiffs allege that "Smock was assigned to represent plaintiff in Court on or about midnight June 15–June 16 of 2005" in connection with misdemeanor charges filed against them after their arrest (Am. Compl. at 12). However, plaintiffs do not allege how Smock departed from the ordinary standard of care required by an attorney. Moreover, Smock succeeded in having the charges unconditionally dismissed. Such a result cannot constitute malpractice.

Accordingly, Smock's motion to dismiss plaintiffs' legal malpractice claim should also be granted.

### c. Callagy

Plaintiffs also assert claims of IIED and legal malpractice against Callagy. Callagy

---

**15.** Plaintiffs also assert their IIED claim against the NYPD. As stated above, *see supra* p. 315, the NYPD is not a suable entity and,

thus, the IIED claim against it should be dismissed. *See East Coast Novelty Co. v. City of New York, supra,* 781 F.Supp. at 1010.

moves for judgment on the pleadings on both counts.

▮ Plaintiffs fail to state a claim of IIED as to Callagy. They merely allege that Callagy failed to "refer plaintiffs to Jennifer Baum at [the] Immigration Law Unit, Legal Aid Society who would obtain a work authorization [for them]" (Am. Compl. at 21). This alleged conduct is not even close to being sufficiently extreme and outrageous to sustain a claim for IIED. *See Howell v. New York Post Co., supra,* 81 N.Y.2d at 122, 612 N.E.2d at 702, 596 N.Y.S.2d at 353. Indeed, plaintiffs' own allegations belie their IIED claim because they go on to admit that Callagy actually helped them obtain "public assistance benefits" (Am. Compl. at 21).

▮ Plaintiffs also fail to state a claim for legal malpractice against Callagy. First, it is unclear from the Amended Complaint whether Callagy actually represented plaintiffs. Even if I assume that an attorney-client relationship did exist, plaintiffs merely allege that Callagy failed to refer them to another attorney at the Legal Aid Society (Am. Compl. at 21). This allegation is insufficient to show that Callagy departed from the ordinary standard of care required by an attorney. *See Tabner v. Drake, supra,* 9 A.D.3d at 609, 780 N.Y.S.2d at 88.

Accordingly, Callagy's motion for judgment on the pleadings with respect to the IIED and legal malpractice claims should be granted.

d. *Buzin and Bobrovskaya*

Plaintiffs assert claims of IIED and legal malpractice against Buzin and Bobrovskaya (Am. Compl. at 13). Buzin and Bobrovskaya move to dismiss on the ground that plaintiffs fail to state a claim on both counts.

▮ Again, plaintiffs fail to adequately plead a claim of IIED. Buzin's alleged conduct—his adjourning a hearing to a later date and his decision to terminate his representation of plaintiffs (Am. Compl. at 13–16)—is simply not extreme and outrageous. *See Kaiser v. Van Houten,* 12 A.D.3d 1012, 1013, 785 N.Y.S.2d 569, 571 (3d Dep't 2004) (affirming dismissal of IIED claim against attorney even though the attorney's inaction led to case being dismissed for failure to prosecute).

Plaintiffs also fail to adequately plead their legal malpractice claim because they do not allege facts tending to show that Buzin did not represent them with the ordinary care, skill, and diligence required of an attorney. Plaintiffs seem to base this claim on the allegations that Buzin (1) "pretended" to work on "plaintiff[s'] false arrest/police brutality/personal injury case" (Am. Compl. at 13); (2) "adjourned the 50H hearing from August 22, 2005 to September 23, 2005" (Am. Compl. at 13); and (3) "unreasonabl[y] refus[ed] to represent" plaintiffs after January 18, 2006 (Am. Compl. at 15). None of these allegations can transmute Buzin's alleged conduct into legal malpractice.

▮ First, Buzin's letters to plaintiffs, which are attached to the Amended Complaint, contradict plaintiffs' naked assertion that he "pretended" to work on their case against the City. For example, in a letter dated February 20, 2006, Buzin informed plaintiffs that, "[a]fter conducting a thorough investigation of the facts regarding your case, as well as review of all of the medical records[,] we have determined that the extent of your injuries would not warrant the time and expense involved in litigating a case against the City" (Buzin 2/20/2006 Ltr.).

Second, the allegation that Buzin adjourned a hearing from August 22, 2005 to September 23, 2005 does not sufficiently

plead a breach of ordinary care by Buzin because it appears to be a reasonable course of conduct. As the New York Court of Appeals has stated, the "selection of one among several reasonable courses of action [by an attorney] does not constitute [legal] malpractice." *Rosner v. Paley*, 65 N.Y.2d 736, 738, 481 N.E.2d 553, 554, 492 N.Y.S.2d 13, 14 (1985).

 Third, the allegation that Buzin unreasonably terminated his representation of plaintiffs on January 18, 2006 is likewise legally insufficient to plead a breach of ordinary care owed by an attorney. In three letters—two dated January 18, 2006 and one dated February 20, 2006—Buzin informed plaintiffs that, if they chose to pursue their suit against the City, they would have to commence it within one year and ninety days from the date of the incident, which plaintiffs allege occurred on June 14, 2005 (Letter from Buzin to Koulkina and Koulikova, dated Jan. 18, 2006, annexed as Exhibit J to Am. Compl.; Letter from Buzin to Koulkina and Koulikova, dated Feb. 20, 2006, annexed as Exhibit J to Am. Compl.). One year and ninety days from this date would have been September 11, 2006. Thus, after Buzin resigned, plaintiffs had approximately eight months in which to bring an action against the City. Indeed, plaintiffs decided to pursue this claim without the assistance of counsel (*see* Letter from Koulkina and Koulikova to Comptroller of the City of New York, dated June 20, 2006, attached as Exhibit J to Am. Compl.; Letter from Koulkina and Koulikova to Comptroller of the City of New York, dated July 6, 2006, attached as Exhibit J to Am. Compl.). Since Buzin withdrew from representing plaintiffs only after advising them of what they needed to do to pursue their claims and with adequate time for plaintiffs to pursue their claims, plaintiffs' bare assertion that Buzin's termination of

his representation was "unreasonable" is legally insufficient to show that he "failed to exercise the care, skill, and diligence commonly possessed and exercised by a member of the legal profession ...." *Parola, Gross & Marino, P.C. v. Susskind*, *supra*, 43 A.D.3d at 1022, 843 N.Y.S.2d at 106.

Because Bobrovskaya is alleged to have acted in concert with Buzin and no material additional conduct is attributed to her (*see* Am. Compl. at 13), it necessarily follows that plaintiffs do not adequately allege claims of IIED and legal malpractice against Bobrovskaya for the same reasons their allegations fail to support the claims asserted against Buzin.

Accordingly, Buzin and Bobrovskaya's motion to dismiss the IIED and legal malpractice claims should be granted.

### e. *Dr. Gaudio*

Plaintiffs assert claims of medical malpractice and IIED against Dr. Gaudio (Am. Compl. at 6). Dr. Gaudio moves to dismiss both counts, claiming that essential elements of both claims are not properly alleged.

 Plaintiffs fail to sufficiently allege both elements of a medical malpractice claim. Plaintiffs merely assert that Dr. Gaudio (1) "did not apply and did not prescribe any disinfectants to [Koulikova's] injured lip and [ ] mouth" (Am. Compl. at 7); (2) "did not eliminate infection on plaintiff's left knee and did not prescribe any disinfectants and extra bandages to [Koulkina's] injured left knee" (Am. Compl. at 7); and (3) "did not evaluate plaintiff[s'] entire bodies [and] record all other injuries and bruises sustained by plaintiffs during felonious assault by the police officers" (Am. Compl. at 7). Even construing the Amended Complaint liberally, plaintiffs fail to allege how Dr. Gaudio's alleged failure to "pre-

scribe any disinfectants" and "evaluate plaintiff[s'] entire bodies" deviated from accepted medical practice. Moreover, plaintiffs do not allege how Dr. Gaudio's alleged conduct caused them any injury. Such bare allegations cannot survive a motion to dismiss. *See Flemming v. Velardi,* 02 Civ. 4113(AKH), 2003 WL 21756108 at *4 (S.D.N.Y. July 30, 2003) (dismissing medical malpractice claim asserted under New York law where *pro se* plaintiff did not allege how neurologist "deviated from accepted medical practice" or how plaintiff "suffered any harm" from the neurologist's alleged conduct).

Plaintiffs also fail to adequately plead a claim of IIED against Dr. Gaudio. "It is well settled that 'a cause of action for [IIED] should not be entertained 'where the conduct complained of *falls well within* the ambit of other traditional tort liability.'" *Butler v. Del. Otsego Corp.,* 203 A.D.2d 783, 784–85, 610 N.Y.S.2d 664, 665–66 (3d Dep't 1994). Because the medical malpractice and the IIED claims against Dr. Gaudio arise from the same allegations, the IIED claim should be dismissed. In any event, the allegations of Dr. Gaudio's treatment of plaintiffs do not constitute "extreme and outrageous conduct[.]" *Howell v. New York Post Co., supra,* 81 N.Y.2d at 122, 612 N.E.2d at 702, 596 N.Y.S.2d at 353.

Accordingly, Dr. Gaudio's motion to dismiss the medical malpractice and IIED claims should be granted.

### f. *Kramer*

Plaintiffs assert a claim of IIED against Kramer (Am. Compl. at 9).[16] Kramer moves for judgment on the pleadings, arguing that the claim is time-barred and deficiently pleaded.

Under New York law, a claim of IIED is subject to a one-year statute of limitation. N.Y. C.P.L.R. § 215(3); *Spinale v. Guest,* 270 A.D.2d 39, 40, 704 N.Y.S.2d 46, 47 (1st Dep't 2000). The allegations concerning Kramer all arise from the statements she wrote during her counseling session with plaintiffs at New York Presbyterian Hospital between June 16 and 17, 2005 (Kramer Nts.). Since plaintiffs filed their Complaint on October 25, 2006—approximately 16 months later—their IIED claim against Kramer is time-barred.

In addition, plaintiffs fail to plead a viable claim of IIED against Kramer. Plaintiffs allege that, after meeting with plaintiffs, Kramer wrote that they were (1) " 'well and clean appearing' "; (2) " 'wearing high heeled shoes' "; (3) " 'vague about where they have been living' "; (4) " 'had stayed at a Hostel for a year' "; (5) " '[seen] asleep in the library' "; and (6) " '[attempting] to secure a new visa' " (Am. Compl. at 9, *quoting* Kramer Nts.). The remainder of plaintiffs' allegations contend that Kramer's statements are false (Am. Compl. at 10–11). Kramer's conduct in making these purported false statements is not " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community[.]' " *Howell v. New York Post Co., supra,* 81 N.Y.2d at 122, 612 N.E.2d at 703, 596 N.Y.S.2d at 353, *quoting Murphy v. Am. Home Prods. Corp., supra,* 58 N.Y.2d at 303, 448 N.E.2d at 90, 461 N.Y.S.2d at 237. Thus, plaintiffs fail to adequately allege the first element of their IIED claim.

Accordingly, Kramer's motion for judgment on the pleadings with respect to the IIED claim should be granted.

16. Plaintiffs also assert a purported claim for "false statements" against Kramer (Am. Compl. at 9). Even when read liberally and in the context of the allegations concerning Kramer, this conclusory phrase does not present a colorable theory for relief.

g. *Dr. Kelly*

Plaintiffs assert claims of medical malpractice and IIED against Dr. Kelly (Am. Compl. at 8). Dr. Kelly moves to dismiss on the ground that plaintiffs fail to state claims on both counts.

 Plaintiffs fail to allege both elements of a medical malpractice claim. In short, Koulkina claims that "Dr. Kelly did not treat [her left knee] sprain" (Am. Compl. at 8). This conclusory allegation is contradicted by plaintiffs' other allegations and the attachments to the Amended Complaint (*see* Am. Compl. at 8–9 (alleging that Dr. Kelly ordered an x-ray and MRI of the knee and referred Koulkina to physical therapy and a consultation with an orthopaedist at Mount Sinai Medical Center); Outpatient Physical Therapy Form, dated Sept. 30, 2005, attached as Exhibit F to Am. Compl.; Referral Form, dated Feb. 17, 2006, attached as Exhibit F to Am. Compl. ("Please evaluate Oxana for pain to left knee. MRI [and] x-ray are negative.")). Because they are contradicted by these documents, plaintiffs' allegations are insufficient to defeat a motion to dismiss. *Matusovsky v. Merrill Lynch, supra,* 186 F.Supp.2d at 400; *see also 2 Broadway LLC v. Credit Suisse First Boston Mortg. Capital LLC,* 00 Civ. 5773(GEL), 2001 WL 410074 at *9 (S.D.N.Y. Apr. 23, 2001) ("Plaintiff's conclusory allegations … are contradicted by the documents attached to the Complaint, and are therefore insufficient to defeat the motion to dismiss."). Even if these allegations were not contradicted, plaintiffs fail to allege that Dr. Kelly's alleged conduct deviated from accepted medical care and that his conduct caused them harm. *See Flemming v. Velardi, supra,* 2003 WL 21756108 at *4.

As with the IIED claim against Dr. Gaudio, the IIED claim against Dr. Kelly should be dismissed because the conduct about which plaintiffs complain falls within the ambit of a claim for medical malpractice. *See Butler v. Del. Otsego Corp., supra,* 203 A.D.2d 784–85, 610 N.Y.S.2d at 665–66. In any event, the alleged acts of Dr. Kelly "do not rise to the level of extreme and outrageous conduct required to sustain [a claim for IIED.]" *Liranzo v. New York City Health & Hosps. Corp.,* 300 A.D.2d 548, 548, 752 N.Y.S.2d 568, 568 (2d Dep't 2002).

Accordingly, Dr. Kelly's motion to dismiss the IIED and medical malpractice claims should be granted.

h. *Dr. Pandya*

Plaintiffs assert claims of medical malpractice and IIED against Dr. Pandya (Am. Compl. at 17). Dr. Pandya moves to dismiss on the ground that plaintiffs fail to allege both claims adequately.

 As to the medical malpractice claim, plaintiffs allege that Dr. Pandya did not evaluate and treat Koulkina's injured finger and knee (Am. Compl. at 17). Plaintiffs further allege that Dr. Pandya refused to refer Koulkina for an MRI to examine her spine (Am. Compl. at 17). The exhibits to the Amended Complaint contradict these allegations, as it appears that Dr. Pandya did refer Koulkina to physical therapy sessions for her knee, (*see* Prescription Form, dated Apr. 26, 2006, attached as Exhibit 0 to Am. Compl.), and did refer her for an MRI (*see* Prescription Form, dated Apr. 20, 2006, attached as Exhibit 0 to Am. Compl.). As noted above, such allegations cannot survive a motion to dismiss where they are contradicted by plaintiffs' own exhibits. *Matusovsky v. Merrill Lynch, supra,* 186 F.Supp.2d at 400; *2 Broadway LLC v. Credit Suisse First Boston Mortg. Capital LLC, supra,* 2001 WL 410074 at *9. Even if these allegations were not contradicted by the attachments, plaintiffs do not allege

how Dr. Pandya's alleged conduct deviated from accepted medical practice and caused them any harm. *See Flemming v. Velardi, supra,* 2003 WL 21756108 at *4.

As with the IIED claim against Dr. Gaudio and Dr. Kelly, the IIED claim against Dr. Pandya should be dismissed because the alleged conduct about which plaintiffs complain also gives rise to their claim for medical malpractice. *See Butler v. Del. Otsego Corp., supra,* 203 A.D.2d 784–85, 610 N.Y.S.2d at 665–66. In any event, the alleged acts of Dr. Pandya "do not rise to the level of extreme and outrageous conduct required to sustain [a claim for IIED.]" *Liranzo v. N.Y. City Health & Hosps. Corp., supra,* 300 A.D.2d at 548, 752 N.Y.S.2d at 568.

Accordingly, Dr. Pandya's motion to dismiss the medical malpratice and IIED claims should be granted.

### i. *Muzzin*

Plaintiffs assert a claim of IIED against Muzzin (Am. Compl. at 21).[17] Muzzin moves to dismiss on the ground that plaintiffs' fail to state a claim.

 Plaintiffs fail to adequately plead a claim of IIED. Plaintiffs allege that Muzzin (1) allowed them to stay in the basement of his church for free from September 2005 to February 10, 2007 (Am. Compl. at 22, 24); (2) issued two checks, totaling $3,500, to help retain an immigration attorney for plaintiffs (Am. Compl. at 22); (3) never offered food to plaintiffs while they lived in the basement of the church (Am. Compl. at 23); (4) wrote a "humiliating letter" to plaintiffs that caused plaintiffs "emotional distress"[18] (Am. Compl. at 23); and (5) forced plaintiffs to vacate the church's premises (Am. Compl. at 24–25). None of these alleged acts constitutes conduct that is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community[.]' " *Howell v. New York Post Co., supra,* 81 N.Y.2d at 121, 612 N.E.2d at 703, 596 N.Y.S.2d at 353, *quoting Murphy v. Am. Home Prods. Corp., supra,* 58 N.Y.2d at 303, 448 N.E.2d at 90, 461 N.Y.S.2d at 237. To the contrary, a number of these alleged acts must have been helpful to plaintiffs. Thus, plaintiffs fail to plead the first element of an IIED claim.

Accordingly, Muzzin's motion to dismiss the IIED claim should be granted.

### j. *Charne*

Plaintiffs assert a claim of IIED against Charne (Am. Compl. at 16). Charne

---

17. Plaintiffs also asset a claim against Muzzin stylized as "pandering to traffickers" (Am. Compl. at 21). I assume plaintiffs are attempting to allege some type of tort based on some type of relationship between Muzzin and individuals who traffick in humans. Even when read liberally and in the context of the allegations concerning Muzzin and assuming such a claim exists, plaintiffs allege no facts supporting this claim. It should, therefore, be dismissed.

18. In this letter, Muzzin informed Koulkina that her unresponsiveness to questions is the reason social services could not help her obtain an attorney to work on her visa and work permit applications (Muzzin Ltr.). It appears that Koulkina felt humiliated because Muzzin wrote that her unresponsiveness left "the impression that [she] got to this country through criminal ways like drugs, prostitution[, and] stuff like that" (Muzzin Ltr.). These written remarks do not rise to the level of extreme and outrageous conduct needed to sufficiently plead a claim for IIED. *See J.C. Klein, Inc. v. Forzley,* 289 A.D.2d 79, 80, 734 N.Y.S.2d 157, 158 (1st Dep't 2001) (affirming dismissal of IIED claim based on comments about plaintiff's character made in a letter); *Kim v. Dvorak,* 230 A.D.2d 286, 291, 658 N.Y.S.2d 502, 505 (3d Dep't 1997) (same).

moves to dismiss, arguing that the claim is time-barred and deficiently pleaded.

Under New York law, a claim of IIED is subject to a one-year statute of limitation. N.Y. C.P.L.R. § 215(3); *Spinale v. Guest, supra,* 270 A.D.2d at 40, 704 N.Y.S.2d at 47. Plaintiffs allege that Charne, Executive Director of the referral service of ABCNY, in a letter dated July 20, 2005, "did not refer [them] to an attorney" (Am. Compl. at 16–17). Since all of Charne's alleged conduct occurred more than one year before plaintiffs filed their Complaint on October 25, 2006, the IIED claim is time-barred.

In any event, plaintiffs' allegations fail to plead a claim of IIED. Plaintiffs allege that "[o]n May 4, 2006 [the referral service of ABCNY] denied a consultation with [an] attorney from Volunteer Lawyers Panel Project on plaintiff[s'] false arrest, police brutality, personal injuries case" (Am. Compl. at 17). This alleged conduct is not so extreme or outrageous that it can be considered " 'atrocious[.]' " *Howell v. New York Post Co., supra,* 81 N.Y.2d at 121, 612 N.E.2d at 703, 596 N.Y.S.2d at 355, *quoting Murphy v. Am. Home Prods. Corp., supra,* 58 N.Y.2d at 303, 448 N.E.2d at 90, 461 N.Y.S.2d at 237.

Accordingly, Charne's motion to dismiss the IIED claim should be granted.

## IV. *Conclusion*

For all the foregoing reasons, I respectfully recommend that the motions to dismiss made by defendants Smock, Callagy, Dr. Pandya, Charne, Muzzin, Buzin, Bobrovskaya, Dr. Kelly, Dr. Gaudio, and Kramer (Docket Items 35, 43, 48, 70, 80, 81, 92) be granted in their entirety. I also recommend that the motion to dismiss made by the City, the NYPD, Finkle, and Kuznetsoff (Docket Item 94) be granted in its entirety with respect to the NYPD; granted to the extent that it seeks dismiss-

al of the Section 1983 claims against the City, Finkle, and Kuznetsoff; and denied to the extent it seeks dismissal of the IIED claims against the City, Finkle, and Kuznetsoff. If accepted, this Report and Recommendation will result in the dismissal of all claims against the NYPD, Dr. Gaudio, Kramer, Dr. Kelly, Dr. Pandya, Smock, Callagy, Buzin, Bobrovskaya, Charne, and Muzzin and leave only the City, Officer Melendez, Officer Jaikissoon, Barsch, Finkle, Kuznetsoff, the New York City Human Resources Administration No. 47, and Zaharatos as defendants.

## V. *Objections*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections. *See also* Fed.R.Civ.P. 6(a) and 6(d). New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Stein. FAILURE TO OBJECT WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).